# HOME TELEPHONE AND TELEGRAPH COMPANY *v.* CITY OF LOS ANGELES.

**APPEAL FROM THE DISTRICT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF CALIFORNIA.**

No. 610.  Submitted October 28, 1912.—Decided February 24, 1913.

One, whose rights protected by a provision of the Federal Constitution which is identical with a provision of the state constitution are invaded by state officers claiming to act under a state statute, is not debarred from seeking relief in the Federal court under the Federal Constitution until after the state court has declared that the acts were authorized by the statute.

The provisions of the Fourteenth Amendment are generic in terms and are addressed not only to the States but to every person, whether natural or judicial, who is the repository of state power.

The reach of the Fourteenth Amendment is coextensive with any exercise by a State of power in whatever form exerted.

Under the Fourteenth Amendment the Federal judicial power can redress the wrong done by a state officer misusing the authority of the State with which he is clothed; under such circumstances inquiry whether the State has authorized the wrong is irrelevant. *Ex parte Young*, 209 U. S. 123, followed. *Barney* v. *New York*, 193 U. S. 430, distinguished.

Acts done under the authority of a municipal ordinance passed in virtue of power conferred by the State are embraced by the Fourteenth Amendment.

The power which exists to enforce the guarantees of the Fourteenth Amendment is typified by the immediate and efficient Federal right to enforce the contract clause of the Constitution as against those violating or attempting to violate its provision.

THE facts, which involve the jurisdiction of the District Court of a suit arising under the due process clause of the Fourteenth Amendment and the validity of an ordinance of Los Angeles, California, establishing telephone rates, are stated in the opinion.

*Mr. James A. Gibson* for appellant.

*Mr. John W. Shenk* and *Mr. George E. Cryer* for appellees:

The Fourteenth Amendment is directed against action by the States themselves and the State of California has taken no action.

The city of Los Angeles is an agent of the State of California with limited powers, which do not include authority to pass or enforce a confiscatory rate ordinance.

Action by the city of Los Angeles in the exercise of a state agency, but not within the limits of its authority from the State, is not state action. *Mechanics' Bank of Alexandria* v. *Bank of Columbia*, 5 Wheat. 326; *Louisville* v. *Telephone Co.*, 155 Fed. Rep. 725.

An unauthorized act of a state agent is not, under the authorities, state action, within the meaning of the Fourteenth Amendment to the Constitution of the United States. *Huntington* v. *New York*, 118 Fed. Rep. 683; aff'd 193 U. S. 440; *Civil Rights Cases*, 109 U. S. 3; *Barney* v. *New York*, 193 U. S. 430; *Missouri* v. *Dockery*, 191 U. S. 165; *Virginia* v. *Rives*, 100 U. S. 313; *Louisville* v. *Telephone Co.*, 155 Fed. Rep. 725; *San Francisco* v. *United Railroads*, 190 Fed. Rep. 507; *Memphis* v. *Telephone Co.*, 218 U. S. 624; *Hamilton Gas Co.* v. *Hamilton*, 146 U. S. 258; *United States* v. *Peralto*, 99 Fed. Rep. 624; *Farley* v. *Kitson*, 120 U. S. 314.

The result of this suit does not depend upon the effect or construction of the Fourteenth Amendment: hence the suit is not one arising under the Constitution or laws of the United States. *Memphis* v. *Telephone Co.*, 218 U. S. 624; *West. Un. Tel. Co.* v. *Ann Arbor R. R. Co.*, 178 U. S. 239; *San Francisco* v. *United Railroads*, 190 Fed. Rep. 507; *Seattle Elec. Co.* v. *Seattle &c. R. Co.*, 185 Fed. Rep. 365.

Appellant's arguments considered, defendant is not estopped to question jurisdiction.

That a suitor has his choice of forum is not denied.

The guaranty of due process contained in the constitution of California has not been impaired by judicial construction. *Seattle Elec. Co.* v. *Seattle &c. R. Co.,* 185 Fed. Rep. 365.

The conclusion does not follow that the adoption of defendant's contention herein would mean the destruction of Federal jurisdiction to enforce the guaranties of the Fourteenth Amendment. *Raymond* v. *Chicago Union Traction Co.,* 207 U. S. 20.

The penal provisions of the ordinance do not operate to deny to appellant the equal protection of the law, nor does that phase of the case present an independent ground for Federal jurisdiction. *Ex parte Young,* 209 U. S. 123.

Appellant's authorities do not support its contention that action by a city, in violation of the state constitution, is state action. *Dobbins* v. *Los Angeles,* 195 U. S. 223; *Yick Wo* v. *Hopkins,* 118 U. S. 356; *Ex parte Virginia,* 100 U. S. 339; *Strauder* v. *West Virginia,* 100 U. S. 303; *Virginia* v. *Rives,* 100 U. S. 313; *Neal* v. *Delaware,* 103 U. S. 370; *Scott* v. *McNeal,* 154 U. S. 34; *Chicago &c. R. Co.* v. *Chicago,* 166 U. S. 226; *Raymond* v. *Chicago Union Traction Co.,* 207 U. S. 20; *Memphis* v. *Telephone Co.,* 218 U. S. 624; *San Francisco* v. *Union Railroads,* 190 Fed. Rep. 507; *Seattle Elec. Co.* v. *Seattle &c. R. Co.,* 185 Fed. Rep. 365; *Louisville* v. *Telephone Co.,* 155 Fed. Rep. 725.

MR. CHIEF JUSTICE WHITE delivered the opinion of the court.

The appellant, a California corporation furnishing telephone service in the city of Los Angeles, sued the city and certain of its officials to prevent the putting into effect of a city ordinance establishing telephone rates for the year commencing July 1, 1911.

It was alleged that by the constitution and laws of the

State the city was given a right to fix telephone rates and had passed the assailed ordinance in the exercise of the general authority thus conferred. It was charged that the rates fixed were so unreasonably low that their enforcement would bring about the confiscation of the property of the corporation, and hence the ordinance was repugnant to the due process clause of the Fourteenth Amendment. The averments as to the confiscatory character of the rates were as ample as they could possibly have been made. The charge of confiscation was supported by statements as to the value of the property, and the sum which might reasonably be expected from the business upon the application of the rates assailed. The confiscatory character of the rates, it was moreover alleged, had been demonstrated by the putting into effect during the previous year of rates of the same amount as those assailed which it was charged the corporation at great sacrifice had after protest submitted to in order to afford a practical illustration of the confiscation which would result.

Being of the opinion that no jurisdiction was disclosed by the bill, the court refused to grant a restraining order or allow a preliminary injunction, and thereafter, on the filing of a formal plea to the jurisdiction, the bill was dismissed for want of power as a Federal court to consider it. This direct appeal was then taken.

The plea to the jurisdiction was as follows:

" . . . that this Court ought not to take jurisdiction of this suit for that the said suit does not really or substantially involve a dispute or controversy properly within the jurisdiction of this Court, for as much as the Constitution of the State of California, in Article 1, section 13 thereof, provides that 'No person shall be . . . deprived of life, liberty, or property without due process of law'; that this complainant, a citizen of the State of California, has never invoked the aid or protection of its said State to prevent the alleged taking of its prop-

erty, nor has complainant appealed to the courts of said State, nor to any of them, to enforce the law of said State."

The ground of challenge to the jurisdiction advanced by the plea may be thus stated: As the acts of the state officials (the city government) complained of were alleged to be wanting in due process of law and therefore repugnant to the Fourteenth Amendment—a ground which on the face of the bill, if well founded, also presumptively caused the action complained of to be repugnant to the due process clause of the state constitution—there being no diversity of citizenship, there was no Federal jurisdiction. In other words, the plea asserted that where, in a given case, taking the facts averred to be true, the acts of state officials violated the Constitution of the United States and likewise because of the coincidence of a state constitutional prohibition were presumptively repugnant to the state constitution, such acts could not be treated as acts of the State within the Fourteenth Amendment, and hence no power existed in a Federal court to consider the subject until by final action of an appropriate state court it was decided that such acts were authorized by the State and were therefore not repugnant to the state constitution. There is no room for doubt that it was upon this interpretation of the plea that the court held it had no power as a Federal court. The court said:

"It is true that the bill in the present case alleges, that, if the ordinance complained of 'is enforced, and your complainant thereby prevented from charging and receiving higher rates than the rates fixed by said ordinance, the State of California will thereby deprive your complainant of its property without due process of law,' etc. This charge, however, that the ordinance complained of is state action, is but a legal conclusion, while the facts alleged are, that the ordinance, if confiscatory, as shown by the bill, is directly prohibited by the Constitution of

the State, which, in article 1, section 13, expressly provides, among other things:

"No person shall . . . be deprived of life, liberty or property without due process of law.

"Thus, the case at bar comes within the rulings of the Circuit Court of Appeals in the Seattle and San Francisco cases, and is precisely covered by the conclusions of the court in the latter case as follows:

"'What we hold is that the averments of the bill itself exclude the case from the cognizance of the Federal Court as a case arising under the Constitution of the United States by alleging that the very ordinances which the appellees relied upon as constituting a violation of its contracts have been enacted in violation of the positive law of the state.'"

It is true that in passages of the opinion subsequent to those just quoted there are forms of expression which when separated from their context might tend to justify the inference that the court thought city ordinances of the character of the one assailed could not in any event be treated as state action. But when the passages referred to are considered in connection with the context of the opinion, it is certain that those expressions were but a reiteration in a changed form of statement of the previous ground, that is to say that state action could not be predicated upon the ordinance because if it was treated as repugnant to the due process clause of the Constitution of the United States it would also have to be considered as in conflict with the state constitution. Under this hypothesis the decision was that it could not be assumed that the State had authorized its officers to do acts in violation of the state constitution until the court of last resort of the State had determined that such acts were authorized.

Coming to consider the real significance of this doctrine, we think it is so clearly in conflict with the decisions of this

court as to leave no doubt that plain error was committed
in announcing and applying it. In view, however, of the
fact that the proposition was sanctioned by the court
below and was by it deemed to be supported by the per-
suasive authority of two opinions of the Circuit Court of
Appeals for the Ninth Circuit, before coming to consider
the decided cases we analyze some of the conceptions upon
which the proposition must rest in order to show its
inherent unsoundness, to make its destructive character
manifest, and to indicate its departure from the substan-
tially unanimous view which has prevailed from the be-
ginning.

In the first place the proposition addresses itself not to
the mere distribution of the judicial power granted by the
Constitution, but substantially denies the existence of
power under the Constitution over the subject with which
the proposition is concerned. It follows that the limita-
tion which it imposes would be beyond possible correction
by legislation. Its restriction would, moreover, attach
to the exercise of Federal judicial power under all circum-
stances, whether the issue concerned original jurisdiction
or arose in the course of a controversy to which otherwise
jurisdiction would extend. Thus, being applicable equally
to all Federal courts under all circumstances in every stage
of a proceeding, the enforcement of the doctrine would
hence render impossible the performance of the duty with
which the Federal courts are charged under the Constitu-
tion. Such paralysis would inevitably ensue, since the
consequence would be that, at least in every case where
there was a coincidence between a national safeguard or
prohibition and a state one, the power of the Federal court
to afford protection to a claim of right under the Constitu-
tion of the United States, as against the action of a State
or its officers, would depend on the ultimate determina-
tion of the state courts and would therefore require a
stay of all action to await such determination. While

this would be obviously true as to cases where there was a coincident constitutional guarantee, in reason it is clear that the principle if sound could not be confined to a case of coincident Federal and state guarantee or prohibition, since, as the Constitution of the United States is the paramount law, as much applicable to States, or their officers, as to others, it would come to pass that in every case where action of a state officer was complained of as violating the Constitution of the United States, the Federal courts in any form of procedure, or in any stage of the controversy, would have to await the determination of a state court as to the operation of the Constitution of the United States. It is manifest that in necessary operation the doctrine which was sustained would in substance cause the state courts to become the primary source for applying and enforcing the Constitution of the United States in all cases covered by the Fourteenth Amendment

It would certainly be open to controversy if the proposition were carried to its logical result whether the only right under the Fourteenth Amendment, which the proposition admits, to exert Federal judicial power growing out of wrongful acts of state officers would not be unavailing. This naturally suggests itself since if there be no right to exert such power until by the final action of a state court of last resort the act of a state officer has been declared rightful and to be the lawful act of the State as a governmental entity, the inquiry naturally comes whether under such circumstances a suit against the officer would not be a suit against the State within the purview of the Eleventh Amendment. The possibility of such a result moreover at once engenders a further inquiry, that is, whether the effect of the proposition would not be to cause the Fourteenth Amendment to narrow Federal judicial power instead of enlarging it and making it more efficacious. It must be borne in mind also that the limitations which the proposition if adopted would impose upon

Federal judicial power would not be in reason solely applicable to an exertion of such power as to the persons and subjects covered by the Fourteenth Amendment, but would equally govern controversies concerning the contract and possibly other clauses of the Constitution.

The vice which not only underlies but permeates the proposition is not far to seek. It consists first in causing by an artificial construction the provisions of the Fourteenth Amendment not to reach those to whom they are addressed when reasonably construed; and second in wholly misconceiving the scope and operation of the Fourteenth Amendment, thereby removing from the control of that Amendment the great body of rights which it was intended it should safeguard and in taking out of reach of its prohibitions the wrongs which it was the purpose of the Amendment to condemn.

Before demonstrating the accuracy of the statement just made as to the essential result of the proposition relied upon by a reference to decided cases, in order that the appreciation of the cases may be made more salient we contrast the meaning as above stated which the Fourteenth Amendment would have if the proposition was maintained with the undoubted significance of that Amendment as established by many decisions of this court.

1. By the proposition the prohibitions and guarantees of the Amendment are addressed to and control the States only in their complete governmental capacity, and as a result give no authority to exert Federal judicial power until by the decision of a court of last resort of a State, acts complained of under the Fourteenth Amendment have been held valid and therefore state acts in the fullest sense. To the contrary the provisions of the Amendment as conclusively fixed by previous decisions are generic in their terms, are addressed, of course, to the States, but also to every person whether natural or juridical who is the repository of state power. By this construction the

reach of the Amendment is shown to be coextensive with any exercise by a State of power, in whatever form exerted.

2. As previously stated, the proposition relied upon presupposes that the terms of the Fourteenth Amendment reach only acts done by State officers which are within the scope of the power conferred by the State. The proposition hence applies to the prohibitions of the Amendment the law of principal and agent governing contracts between individuals and consequently assumes that no act done by an officer of a State is within the reach of the Amendment unless such act can be held to be the act of the State by the application of such law of agency. In other words, the proposition is that the Amendment deals only with the acts of state officers within the strict scope of the public powers possessed by them and does not include an abuse of power by an officer as the result of a wrong done in excess of the power delegated. Here again the settled construction of the Amendment is that it presupposes the possibility of an abuse by a state officer or representative of the powers possessed and deals with such a contingency. It provides, therefore, for a case where one who is in possession of state power uses that power to the doing of the wrongs which the Amendment forbids even although the consummation of the wrong may not be within the powers possessed if the commission of the wrong itself is rendered possible or is efficiently aided by the state authority lodged in the wrongdoer. That is to say, the theory of the Amendment is that where an officer or other representative of a State in the exercise of the authority with which he is clothed misuses the power possessed to do a wrong forbidden by the Amendment, inquiry concerning whether the State has authorized the wrong is irrelevant and the Federal judicial power is competent to afford redress for the wrong by dealing with the officer and the result of his exertion of power.

To speak broadly, the difference between the proposi-

tion insisted upon and the true meaning of the Amendment
is this, that the one assumes that the Amendment virtually
contemplates alone wrongs authorized by a State and
gives only power accordingly, while in truth the Amend-
ment contemplates the possibility of state officers abusing
the powers lawfully conferred upon them by doing wrongs
prohibited by the Amendment. In other words, the Amend-
ment, looking to the enforcement of the rights which it
guarantees and to the prevention of the wrongs which it
prohibits, proceeds not merely upon the assumption that
States acting in their governmental capacity in a complete
sense may do acts which conflict with its provisions, but,
also conceiving, which was more normally to be contem-
plated, that state powers might be abused by those who
possessed them and as a result might be used as the instru-
ment for doing wrongs, provided against all and every
such possible contingency. Thus the completeness of the
Amendment in this regard is but the complement of its
comprehensive inclusiveness from the point of view of
those to whom its prohibitions are addressed. Under
these circumstances it may not be doubted that where a
state officer under an assertion of power from the State
is doing an act which could only be done upon the predi-
cate that there was such power, the inquiry as to the
repugnancy of the act to the Fourteenth Amendment
cannot be avoided by insisting that there is a want of
power. That is to say, a state officer cannot on the one
hand as a means of doing a wrong forbidden by the Amend-
ment proceed upon the assumption of the possession of
state power and at the same time for the purpose of avoid-
ing the application of the Amendment, deny the power
and thus accomplish the wrong. To repeat, for the pur-
pose of enforcing the rights guaranteed by the Amendment
when it is alleged that a state officer in virtue of state
power is doing an act which if permitted to be done *prima
facie* would violate the Amendment, the subject must be

tested by assuming that the officer possessed power if the act be one which there would not be opportunity to perform but for the possession of some state authority.

Let us consider the decided cases in order to demonstrate how plainly they refute the contention here made by the court below and how clearly they establish the converse doctrine which we have formulated in the two propositions previously stated. As to both the propositions, the cases are so numerous that we do not propose to review them all, but simply to select a few of the leading cases as types, concluding with a brief consideration of a few cases which are supposed to give support to a contrary view.

In *Virginia* v. *Rives*, 100 U. S. 313, the case briefly was this: An accused person sought to remove from a state to a Federal court the trial of an indictment pending against him on the ground that he was a colored person and although by the state statute he had a right to have people of his race serve on juries, that in practice on account of race prejudice they were excluded and thereby he was denied the equal protection of the laws. Two questions arose for decision—first, was the alleged exclusion a violation of the Fourteenth Amendment, and second, if it was did it afford ground for a removal of the case? Considering the first, the court said (p. 318):

"The provisions of the Fourteenth Amendment of the Constitution we have quoted all have reference to State action exclusively, and not to any action of private individuals. . . ."

Determining whether the enforcement by the state officer of a non-discriminating statute in a discriminatory manner was within the Amendment, it was said (p. 318):

"It is doubtless true that a State may act through different agencies, either by its legislative, its executive, or its judicial authorities; and the prohibitions of the amendment extend to all action of the State denying equal pro-

tection of the laws, whether it be action by one of these agencies or by another. Congress, by virtue of the fifth section of the Fourteenth Amendment, may enforce the prohibitions whenever they are disregarded by either the Legislative, the Executive, or the Judicial Department of the State. The mode of enforcement is left to its discretion. It may secure the right, that is, enforce its recognition, by removing the case from a State court in which it is denied, into a Federal court where it will be acknowledged."

Thus holding that the enforcement by a state official of a statute in a discriminatory manner although the statute might not be inherently discriminating was within the Amendment, the question of the right to remove was considered and it was decided that the removal act of Congress was narrower than the Constitutional Amendment and did not confer the right to remove.

In *Ex parte Virginia*, 100 U. S. 339, the case was this: A judge of a Virginia county court was indicted under the Civil Rights Act for excluding negroes from juries on account of their race, color, etc. The accused applied to this court for a writ of *habeas corpus* and a writ of *certiorari* to bring up the record and a like petition was presented on behalf of the State of Virginia, and both applications were disposed of at the same time. The first issue to be determined was the meaning of the Fourteenth Amendment. The ruling in *Virginia* v. *Rives* was reiterated, the court saying (p. 346):

"They have reference to actions of the political body denominated a State, by whatever instruments or in whatever modes that action may be taken. A State acts by its legislative, its executive, or its judicial authorities. It can act in no other way. The constitutional provision, therefore, must mean that no agency of the State, or of the officers or agents by whom its powers are exerted, shall deny to any person within its jurisdiction the equal protection of the laws. Whoever, by virtue

of public position under a State government, deprives another of property, life, or liberty, without due process of law, or denies or takes away the equal protection of the laws, violates the constitutional inhibition; and as he acts in the name and for the State, and is clothed with the State's power his act is that of the State. This must be so, or the constitutional prohibition has no meaning. Then the State has clothed one of its agents with power to annul or to evade it."

Answering the claim that there was no power to punish a state judge for judicial action and therefore that the charge made was not within the Fourteenth Amendment, it was said that the duty concerning the summoning of jurors upon which the charge of discrimination was predicated was not a judicial but merely a ministerial one. It was, however, pointed out that even if this was not the case, as the state statute gave no power to make the discrimination, it was therefore such an abuse of state power as to cause the act complained of to be not within the state judicial authority, but a mere abuse thereof, and that it was "idle" under such circumstances to say that the offense was not within the Amendment (p. 348).

In *Neal* v. *Delaware*, 103 U. S. 370, a discriminating enforcement in practice of laws which were in their terms undiscriminating was again held to be within the Amendment, the language which we have quoted from *Ex parte Virginia* being reiterated.

In *Yick Wo* v. *Hopkins*, 118 U. S. 356, the enforcement of certain city ordinances was prohibited on the ground that they were within the reach of the Fourteenth Amendment. The court, reiterating the doctrine of *Virginia* v. *Rives* and *Ex parte Virginia*, held that this conclusion was sustained from a two-fold point of view—first, the terms of the ordinances, and second, in any event from the discriminatory manner in which the ordinances were applied by the officers.

In *Raymond* v. *Traction Company,* 207 U. S. p. 20, the whole subject—almost in the identical aspect which is here involved—came under consideration. The case concerned the repugnancy to the Fourteenth Amendment of a reassessment made by a state board of equalization, and the suit was originally commenced in a Federal court. It was pressed that as the claim of the complainant was in effect that the board in the reassessment had violated an express requirement of the state constitution in that the board had "disobeyed the authentic command of the State by failing to make its valuations in such a way that every person shall pay a tax in proportion to the value of his property," the act of the subordinate board could not be deemed the act of the State. This contention was held to be unsound and it was decided that even although the act of the board was wrongful from the point of view of the state constitution or law, it was nevertheless an act of a state officer within the intendment of the Fourteenth Amendment. It was pointed out that as the result of the enforcement of the reassessment would be an assertion of state power accomplishing a wrong which the Fourteenth Amendment forbade, the claim of right to prevent such act under the Fourteenth Amendment "constitutes a Federal question beyond all controversy." It was then said (pp. 35–36):

"The state board of equalization is one of the instrumentalities provided by the State for the purpose of raising the public revenue by way of taxation. . . . . Acting under the constitution and laws of the State, the board therefore represents the State, and its action is the action of the State. The provisions of the Fourteenth Amendment are not confined to the action of the State through its legislature, or through the executive or judicial authority. Those provisions relate to and cover all the instrumentalities by which the State acts, and so it has been held that, whoever by virtue of public position under a

state government, deprives another of any right protected by that amendment against deprivation by the State, violates the constitutional inhibition; and as he acts in the name of the State and for the State, and is clothed with the State's powers, his act is that of the State."

Referring to some reliance to the contrary placed upon a decided case, it was said (p. 37):

"*Barney* v. *City of New York*, 193 U. S. 430, holds that where the act complained of was forbidden by the state legislature, it could not be said to be the act of the State. Such is not the case here."

The reassessment complained of was held to be repugnant to the Fourteenth Amendment.

Finally the subject was elaborately considered in *Ex parte Young*, 209 U. S. 123. Without attempting to fully state the case it suffices to say that although the proceeding was one in *habeas corpus*, the controversy in its ultimate aspect concerned the power of a Federal court to prevent the enforcement of railroad rates fixed under state legislative authority which were confiscatory. In the course of an opinion reviewing the whole field it was said (p. 155):

"The various authorities we have referred to furnish ample justification for the assertion that individuals, who, as officers of the State, are clothed with some duty in regard to the enforcement of the laws of the State, and who threaten and are about to commence proceedings, either of a civil or criminal nature, to enforce against parties affected an unconstitutional act, violating the Federal Constitution, may be enjoined by a Federal court of equity from such action."

Although every contention pressed and authority now relied upon in favor of affirmance is disposed of by the general principles which we have previously stated, before concluding we specially advert to some of the contentions

urged to the contrary.   1.  Much reliance is placed upon the decisions in *Barney* v. *New York,* 193 U. S. 430, and *Memphis* v. *Telephone Co.,* 218 U. S. 624.  The latter we at once put out of view with the statement that on its face the question involved was one of pleading and in no sense of substantive Federal power.   As to the other—the *Barney Case*—it might suffice to say, as we have already pointed out, it was considered in the *Raymond Case* and if it conflicted with the doctrine in that case and the doctrine of the subsequent and leading case of *Ex parte Young,* it is now so distinguished or qualified as not to be here authoritative or even persuasive.  But on the face of the *Barney Case* it is to be observed that however much room there may be for the contention that the facts in that case justified a different conclusion, as the doctrine which we have stated in this case was plainly recognized in the *Barney Case* and the decision there rendered proceeded upon the hypothesis that the facts presented took the case out of the established rule, there is no ground for saying that that case is authority for overruling the settled doctrine which, abstractly at least, it recognized.   If there were room for such conclusion in view of what we have said it would be our plain duty to qualify and restrict the *Barney Case* in so far as it might be found to conflict with the rule here applied.   2.  In the opinion of the court below, there is a suggestion that even though the Fourteenth Amendment embraces acts of state officers to the extent and scope which we have stated, nevertheless the case here presented is not controlled by the Amendment since the case concerns not acts of officers done under state authority, but merely acts of city officials done under the authority of a municipal ordinance.  But, as we have already pointed out, it was long since settled that acts done under the authority of a municipal ordinance passed in virtue of power conferred by a State are embraced by the Fourteenth Amendment.

Apart, however, from the controlling effect of the decisions rendered in cases concerning the enforcement of the Fourteenth Amendment, the unsoundness of the contention is plainly demonstrated by applying the established principle that the exercise of municipal legislative authority under the sanction of a state law is the exertion of state legislative power within the purview of the contract clause of the Constitution (Article I, § 10), declaring: "No State . . . shall pass any . . . law impairing the obligation of contracts." That this interpretation is here conclusive must be apparent, since it cannot be said that an act which is the exertion of state legislative power for the purpose of one provision of the Constitution is not the exertion of state legislative power under the operation of another constitutional provision, both being addressed to the same subject, that is, state legislative power.

And this gives rise at once to a demonstration from another and more final point of view of the incongruity which would result from maintaining the contention insisted upon. While the guarantees of the Fourteenth Amendment cover subjects not included in the contract clause, since the former embraces every manifestation of state power and the latter is concerned only with legislative power when exerted so as to impair contracts, yet the fundamental assertion of Federal power made by each Amendment is the same when the different subjects to which each is applicable are put out of view. To illustrate: The command of the Fourteenth Amendment "No State shall make any law abridging . . . nor shall any State deprive any person," etc., is in substance a manifestation of the same power exerted in the contract clause, saying "No State shall pass," etc. This being true, as it must be, the fact that from the foundation of the Government the contract clause has been enforced without any intimation that the power manifested by the

clause was restricted by limitations such as those which it is here insisted limit the power to enforce the guarantees of the Fourteenth Amendment, affords the most conclusive demonstration of the unsoundness of the contentions here made. The immediate and efficient Federal right to enforce the contract clause of the Constitution as against those who violate or attempt to violate its prohibition, which has always been exerted without question, is but typical of the power which exists to enforce the guarantees of the Fourteenth Amendment. See authorities as to the contract clause referred to in the opinion in *Ross* v. *Oregon, ante,* p. 150.

*Reversed.*