NATIONAL MERCANTILE CO., Limited, v. KEATING, State Auditor of Montana, et al.

(District Court, D. Montana. December 8, 1914.)

No. 13.

CONSTITUTIONAL LAW (§ 42*)—POWER OF COURT TO DETERMINE—"BLUE SKY LAW."

A court of equity will not inquire into the constitutionality of a state "blue sky law" (Laws Mont. 1913, c. 85), at suit of a corporation whose plan of doing business indicates on its face that it is intended to defraud.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 39, 40; Dec. Dig. § 42.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

In Equity. Suit by the National Mercantile Company, Limited, against William Keating, State Auditor of Montana and Investment Commissioner ex officio, and others. Suit dismissed.

Joseph H. Griffin, of Butte, Mont., for plaintiff.

D. M. Kelly, Atty. Gen., of Montana, J. H. Alvord, Asst. Atty. Gen., of Montana, and J. J. McCaffery, of Butte, Mont., for defendants.

BOURQUIN, District Judge. Plaintiff is a Canada corporation doing business in Montana. It seeks to enjoin enforcement of the state's "blue sky law." Final hearing has been had. The law (Laws 13th Sess. Montana, p. 367) is like unto those referred to in Alabama & N. O. Transp. Co. v. Doyle (D. C.) 210 Fed. 175, National Mercantile Co. v. Watson (D. C.) 215 Fed. 931, and William R. Compton Co. v. Allen (D. C.) 216 Fed. 548, save that, curiously enough, it declares investment companies shall include all corporations that sell securities issued by any *other* corporation, though it also declares unlawful any sale of *any* securities by any investment company unless a permit be first secured. There are exceptions not material here.

Plaintiff contends the law violates the federal Constitution in various particulars. It seems plaintiff's business is in the nature of a loan and mortgage business, and defendants contend that, even if this is sale of securities, it is not of securities issued by any *other* corporation; hence plaintiff is not within the class in respect to which, if any, the law is unconstitutional, and so is precluded from attacking it. The definition of investment companies in the law is to be construed as a precautionary extension, rather than as excluding subjects not named. Furthermore, defendants assume to apply the law to plaintiff, and, if thereby plaintiff's constitutional rights are infringed, it may contest the law's validity. Home Tel., etc., Co. v. Los Angeles, 227 U. S. 288, 33 Sup. Ct. 312, 57 L. Ed. 510.

At the hearing, plaintiff submitted in evidence documents fully and exhaustively setting out its methods and business. In addition, its general manager testified briefly in relation thereto, though this was limited by the court upon the theory that no issue was made upon plaintiff's reliability or responsibility. Upon reading the documents aforesaid, however, the court is satisfied that they embody a scheme tending to defraud; and if the restriction placed upon the manager's testimony was error, it is harmless, in that such testimony was but cumulative and could not relieve this sinister aspect.

Plaintiff solicits applications for and issues "loan and home purchasing contracts." Each contract is limited to an amount from $300 to $5,000 in any series; a series being composed of contracts aggregating not in excess of $100,000. In their main features the contracts provide that the applicant shall pay the amount stipulated in an initial and 99 monthly equal payments. After 10 per cent. of the stipulated amount or "face value" has been paid, the applicant is "eligible to receive a loan in a sum equal to the face value of his contract in the order of his application * * * out of the loan and reserve fund of the particular series" of his contract, on adequate

security in substance and form to be approved by plaintiff's board of directors, provided the said fund contains sufficient moneys. This fund is made up of all payments made by applicants *not taken as needed by plaintiff* for legitimate expenses governed by its board of directors (the applicant agreeing to such taking), interest earned, forfeitures, etc. If the loan is made, it is repaid at the monthly rate of $7 and accrued interest *at 3 per cent. per annum,* per $1,000 of loan, or interest may be in an "equated amount" of *$1.20 per month* per $1,000. The applicant may or may not surrender the contract in payment upon the loan to the extent of the contract payments made.

If he retains the contract, there are various surrender features, wherein the applicant will receive a certain amount of cash *if and "when accumulated for."* If he makes all payments, plaintiff agrees to pay at the end of 120 months the face of the contract, 15 per cent., and such equitable proportion of any surplus *(if created)* as *may be* apportioned to him by plaintiff's board of directors, but not to exceed 33⅓ per cent. of the face of the contract, out of the loan and reserve fund *as soon as the amount on hand to the credit of his contract equals the amount so due him.* Or at his option the applicant (1) "may accept" in cash in full settlement the amount, *if any,* in said fund standing or placed to his credit and not less than $866.30 per $1,000 paid by him, *as soon as accumulated,* or (2) may so accept the full amount, *if any, standing to his credit* in said fund. It is to be observed plaintiff is not a mutual concern. Applicants have no part in management or control. Nothing indicates plaintiff is endowed or a philanthropic institution. There are no restrictions upon it, save in so far as the collective conscience of its owners may be inspired by high morality impregnable to the assaults of avarice incited by opportunity. Plaintiff binds itself to no unconditional loans to applicants, to no unconditional payments on account of contract payments by applicants made. It loans and pays only *if,* after it has "taken" for itself practically all it pleases (for "legitimate expenses * * * governed by the board of directors" is sufficiently elastic therefor), there is aught and sufficient accumulated therefor in a *possible* loan and reserve fund.

The alluring feature to the applicant is a loan to build a home at rates of interest that in view of circumstances antagonize sound economic principles. Under any circumstances, few could realize their hopes; and that fewer would, in view of conditions and contingencies, is obvious. That this corporation is designed to profit its owners at the expense of victims enticed by pseudo promises and deceptive prospects seems clear. Therein, a court of equity—of conscience—will give no aid. Those appealing to equity to restrain the trespasses of others must themselves be free from imputation. If the right they assert is to do iniquity, they cannot have equity. Equity interferes in behalf of righteous dealing only, and not to further schemes of questionable morality calculated to deceive the public. Otherwise it would do violence to its principles, work injustice, and forfeit respect. The strong arm of equity—injunction—is cautiously exercised, when plaintiff's right is not doubtful, but clear and certain, and when upon

broad consideration of all the circumstances good conscience requires it. All this is settled law since the classic case wherein one highwayman of two operating upon Blackheath near London came into chancery for an accounting of profits accruing from their villiany. In this view of the case, it is unnecessary to consider the attack upon the constitutionality of the state's "blue sky law," for in no event is plaintiff entitled to the relief sought.

The suit is ordered dismissed, with costs to defendants.