## UNITED STATES v. SUTHERLAND.

### No. 16173.

District Court, N. D. Georgia, Atlanta Division.

July 31, 1940.

Raymond W. Martin, Asst. U. S. Atty., and Lawrence S. Camp, U. S. Atty., both of Atlanta, Ga., for plaintiff.

Clint W. Hager, J. F. Kemp, and H. A. Allen, all of Atlanta, Ga., for defendant.

UNDERWOOD, District Judge.

The above case came on for hearing upon the demurrers, both general and special, of defendant. The case was presented both by oral argument and written brief.

The indictment demurred to is in three counts, each alleging violation of the following Federal statute: "Whoever, under color of any law, statute, ordinance, regulation, or custom, willfully subjects, or causes to be subjected, any inhabitant of any State, Territory, or District to the deprivation of any rights, privileges, or

immunities secured or protected by the Constitution and laws of the United States, or to different punishments, pains, or penalties, on account of such inhabitant being an alien, or by reason of his color, or race, than are prescribed for the punishment of citizens, shall be fined not more than $1,-000, or imprisoned not more than one year, or both." 18 U.S.C.A. § 52.

While the offenses stated in the several counts respectively, allege violations of different provisions of the statute, the validity of each is questioned on the same grounds, which involve substantially the same questions of law and will be considered together.

In substance, each count alleges deprivation of civil rights of a Negro boy, Quintar South, by acts of defendant, committed while acting in the capacity of a police officer, under color of State law establishing the office and prescribing the duties thereof. Such acts consisted of alleged threats, assaults and torture inflicted by defendant while exercising the authority of such office in an effort to extort from South a confession of guilt of theft, in violation of the above quoted Federal statute.

■ For the purposes of the demurrer, the allegations of the three counts must, of course, be taken as true.

This being the case, it must be first determined whether or not acts of assault and torture in the circumstances alleged, by a State officer, in the performance of his duties as such and for the purpose of extorting a confession of crime, constitute a denial of due process of law and therefore a deprivation of rights, privileges and immunities secured or protected by the Constitution and laws of the United States.

■ The right to due process of law and exemption from compulsory self-accusation can no longer be doubted to be privileges and immunities secured and protected by the Constitution of the United States.

Except for the many examples, afforded by reported decisions of courts in all sections of the country, one, in this day and time, could hardly conceive that methods of the dark ages, in the form of torture and third degree treatment of prisoners, would be employed in efforts to extort confessions to be used in efforts to convict them of crime. It is disturbing to contemplate the prevalence of such practices and their condonation by so many people. This condonation, however, has not been approved

by the courts, and from the beginning the Supreme Court of the United States has condemned such treatment in the severest terms and has expressly held that same is a denial of due process of law, and a deprivation of privileges and immunities secured by the Constitution.

In a very recent case, the Supreme Court, referring to such treatment, said:

"To permit human lives to be forfeited upon confessions thus obtained would make of the constitutional requirement of due process of law a meaningless symbol.

"We are not impressed by the argument that law enforcement methods such as those under review are necessary to uphold our laws. The Constitution proscribes such lawless means irrespective of the end. And this argument flouts the basic principle that all people must stand on an equality before the bar of justice in every American court." Chambers v. Florida, 309 U.S. 227, 240, 60 S.Ct. 472, 479, 84 L.Ed. 716.

In another part of the same decision, the Court said, on page 237 of 309 U.S., on page 477 of 60 S.Ct., 84 L.Ed. 716: "The rack, the thumbscrew, the wheel, solitary · confinement, protracted questioning and cross questioning, and other ingenious forms of entrapment of the helpless or unpopular had left their wake of mutilated bodies and shattered minds along the way to the cross, the guillotine, the stake and the hangman's noose. And they who have suffered most from secret and dictatorial proceedings have almost always been the poor, the ignorant, the numerically weak, the friendless, and the powerless."

In an earlier decision, the Supreme Court said: "It would be difficult to conceive of methods more revolting to the sense of justice than those taken to procure the confessions of these petitioners, and the use of the confessions thus obtained as the basis for conviction and sentence was a clear denial of due process." Brown v. State of Mississippi, 297 U.S. 278, 286, 56 S.Ct. 461, 465, 80 L.Ed. 682.

■ I do not think there can be any question but that the acts charged in the indictment constitute a clear unwarranted and inexcusable denial of due process of law and a violation of the Civil Rights Statute, 18 U.S.C.A. § 52, and I so hold.

It is left, however, to determine whether the acts charged in the indictment, committed in the circumstances alleged, constitute a deprivation by the State of any

rights, privileges or immunities secured or protected by the Constitution and laws of the United States.

■ It is, of course, recognized that the guaranty of due process of law provided in the Fourteenth Amendment is directed against State action and not private infringement of rights, so that. it must be determined whether or not the acts of defendant, in the circumstances charged, constituted State action.

■ The answer to this question depends upon whether or not such alleged acts of defendant, done under color of the law creating his office and in the performance of his duty as such officer, were, in the eyes of the law, State action, as distinguished from the acts of an individual.

Defendant contends that the indictment must allege that there existed a State statute or custom which authorized the conduct complained of in order to constitute State as distinguished from private action.

The decisions of the Supreme Court do not sustain this position, but, on the contrary, hold that the action of a duly qualified officer, acting within the scope of his authority, constitutes State action, even though the particular acts complained of may not be authorized.

"Whoever, by virtue of public position under a State government, deprives another of property, life, or liberty, without due process of law, or denies or takes away the equal protection of the laws, violates the constitution; and as he acts in the name and for the State, and is clothed with the State's power, his act is that of the State." Ex parte Virginia, 100 U.S. 339, 347, 25 L.Ed. 676.

"And the action of prosecuting officers on behalf of the state, like that of administrative officers. in the execution of its laws, may constitute state action within the purview of the Fourteenth Amendment. That amendment governs any action of a state, 'whether through its legislature, through its courts, or through its executive or administrative officers.'" Mooney v. Holohan, 294 U.S. 103, 55 S.Ct. 340, 342, 79 L.Ed. 791, 98 A.L.R. 406.

This is true where the officer acts without specific authority to do the particular acts alleged and also where such acts are expressly forbidden by State law.

"But acts done 'by virtue of public position under a State government, * * * and * * * in the name and for the State,' Ex parte Virginia, 100 U.S. 339, 347, 25 L.Ed. 676, are not to be treated as if they were the acts of private individuals, although in doing them the official acted contrary to an express command of the state law. When a state official, acting under color of state authority, invades, in the course of his duties, a private right secured by the Federal Constitution, that right is violated, even if the state officer not only exceeded his authority but disregarded special commands of the state law." Iowa-Des Moines Bank v. Bennett, 284 U.S. 239, 245, 246, 52 S.Ct. 133, 135, 76 L.Ed. 265.

Referring to the Fourteenth Amendment, the Supreme Court said, in Home Telephone Company v. Los Angeles, 227 U.S. 278, 287, 33 S.Ct. 312, 315, 57 L.Ed. 510: "Here again the settled construction of the Amendment is that it presupposes the possibility of an abuse by a state officer or representative of the powers possessed, and deals with such a contingency. It provides, therefore, for a case where one who is in possession of state power uses that power to the doing of the wrongs which the Amendment forbids, even although the consummation of the wrong may not be within the powers possessed, if the commission of the wrong itself is rendered possible or is efficiently aided by the state authority lodged in the wrongdoer. That is to say, the theory of the Amendment is that where an officer or other representative of a state, in the exercise of the authority with which he is clothed, misuses the power possessed to do a wrong forbidden by the Amendment, inquiry concerning whether the state has authorized the wrong is irrelevant, and the Federal judicial power is competent to afford redress for the wrong by dealing with the officer and the result of his exertion of power."

Upon the above authorities, I find that the indictment charges violations of the above quoted statute (18 U.S.C.A. § 52), and that the alleged acts of the defendant constitute State action and were in violation of the Fourteenth Amendment of the Constitution.

I pass now to consideration of the special demurrers interposed to the three counts of the indictment.

■ The indictment charges in sufficiently specific language that defendant was acting under authority of a State law creating the office of policeman and detective

and prescribing the duties of such office; that under color of such law and authority, he committed the unlawful acts alleged in the three counts of the indictment, which acts are very specifically and sufficiently described and put defendant on notice as to what acts are claimed to have violated the Federal statute.

If there is any further and more specific information desired, a request for bill of particulars may be presented, but as far as the indictment is challenged by the special demurrers, I find that it is sufficient in law, although a bill of particulars will be directed if defendant requests same.

Whereupon, it is considered, ordered and adjudged that said demurrers, both general and special, are each and all hereby overruled.