Casimir TRAUSS, Individually and trading as Trauss Electric Service, etc.,

v.

CITY OF PHILADELPHIA, Richardson S. Dilworth, Mayor, et al.

Max ZUCKER, etc.,

v.

CITY OF PHILADELPHIA, Richardson S. Dilworth, Mayor, et al.

Ralph GLASSMAN, Individually and trading as Alert Electric Company, etc.,

v.

CITY OF PHILADELPHIA, Richardson S. Dilworth, Mayor, et al.

M. ZUCKER COMPANY, a Pennsylvania Corporation, etc.,

v.

CITY OF PHILADELPHIA, Richardson S. Dilworth, Mayor, et al.

Nos. 23714–23717 of 1957.

United States District Court
E. D. Pennsylvania.
March 14, 1958.

I. Herbert Rothenberg, Philadelphia, Pa., for plaintiffs.

David Berger, Thomas A. Masterson, Meranze & Katz, Gray, Schaffer & Malloy, Philadelphia, Pa., for defendants.

LORD, District Judge.

These cases were argued and will be considered and disposed of together. They are four separate equity actions brought by individuals in their capacities as contractors on municipal public works, as taxpayers, and as representatives of others so situated. The numerous defendants comprise the City of Philadelphia, the Mayor of Philadelphia, other Philadelphia officials, the members of a certain Philadelphia Board of Labor Standards, five labor unions, and labor officials. Some of the defendants are sued in more than one capacity.

The gravamen of the complaint is a certain "Addendum to City Contracts", a physical supplement which is inserted in the existing forms of specifications for bids and contracts of the City of Philadelphia for public works. Its chief provisions are that the contractor shall pay his employees no less than the wages prevailing in the community, and shall provide the generally prevailing working conditions. It further requires that, as to contractors not having collective bargaining agreements with their employees, controversies under this Addendum shall be referred for arbitration to a Board of Labor Standards. The makeup of that Board is stipulated in the Addendum itself—the Board being a creature of the Addendum. Decisions of the Board shall be final.

This Addendum was the focus of a controversy between Glassman, one of the present plaintiffs, and the City of Philadelphia in a cause heard by the Court of Common Pleas No. 6 of Philadelphia County, September Term, 1956, No. 2784. The opinion of Levinthal, J., disposing of the matter on preliminary objections is reported in Glassman v. Philadelphia, 1956, 9 Pa. Dist. & Co. R. 2d 495. That the main issues here presented were raised in that controversy is shown by the opening paragraph of that opinion at page 496:

"The basic issues raised by the pleadings in this equity suit are (1) whether or not certain provisions in the contracts between defendant city and plaintiff contractor, requiring the latter to pay his employes no less than the wages prevailing in the community and to provide generally prevailing working conditions, are legally valid, and (2) whether or not the arbitration provisions in the contracts are enforcible."

After thorough and detailed discussion of those issues, and many other contentions of plaintiff similar to those advanc-

ed in the instant case, the court dismissed the complaint but granted the counterclaim of defendants and ordered the plaintiff specifically to perform the arbitration agreements.

It was conceded at oral argument that no appeal was taken from that dismissal; that the grievances in question proceeded to arbitration; and that plaintiffs' exceptions to the decision of the arbitrators are now pending before the Court of Common Pleas of Philadelphia County. Pending also are motions for depositions, interrogatories, and protective orders involving substantially the parties in the present cause.

The briefs and arguments of respective counsel invite attention to the sufficiency of statement of the equitable grounds and a great deal more, but defendants' objections to the jurisdiction of this Court compel immediate attention. Touching the merits, therefore, it will only be observed that if the allegations were to be considered as true for the purpose of a general motion to dismiss, they are not to be taken lightly in a court of equity. Conversely, if they are not eventually supportable by evidence, it would seem that plaintiffs have pressed the privilege of the pleader to the utmost limits. If this Court is *coram non judice*, however, the substance of the numerous allegations cannot properly be considered here.

A reading of the opinion in the unappealed decision of Judge Levinthal makes clear that a local court has already passed upon a number of the very matters again sought to be raised by the present plaintiffs. In that opinion the contract provisions were set out in detail, and carefully considered in the light of the Pennsylvania decisions, the applicable statutes, and the Lowest Responsible Bidder provisions of the Philadelphia City Charter. In all respects the contract provisions of the challenged Addendum were found lawful and equitable. Accordingly, the plaintiff was directed to submit his grievances to arbitration on the grounds that he was estopped to question the

arbitration requirements to which he had knowingly and deliberately subscribed.

The complaints before this Court nevertheless persist in the contention that the Addendum is wholly illegal, and was promulgated without benefit of any ordinance or executive order. It is further alleged that the Addendum was incorporated into specifications for bids and city contracts in collusion with labor unions; that the membership of the Board of Labor Standards has been packed in favor of union labor; and that a fair hearing cannot be obtained by an employer of non-union labor in arbitration before that bureau. The plethoric assertions as to discrimination, conspiracy and overreaching are by no means to be taken lightly, but it seems somewhat gratuitous to recount them here unless a federal question is presented to give this Court the bare power to consider them. Illustration will therefore be confined to one sample of the bitterness of plaintiffs' asserted grievances—an offer contained in their trial brief:

> "If your Honorable Court permits the Plaintiffs here to go to trial, the transcript of the proceedings before the so-called Board of Labor Standards will be introduced into evidence as the best proof of the 'kangaroo' proceedings to which the said Ralph Glassman was subjected * * *."

The threshold impediment to permitting plaintiffs ever to offer such proof here is that this is a Court of not only limited, but also of purely statutory jurisdiction. The Constitution of the United States does not permit one to come into a District Court of the United States under its direct authority. Kline v. Burke Const. Co., 1922, 260 U.S. 226, 234, 43 S.Ct. 79, 67 L.Ed. 226. Every federal court, for that matter, other than the Supreme Court, derives its jurisdiction wholly from the authority of Congress. Mason v. Hitchcock, 1 Cir., 1939, 108 F.2d 134.

Although the complaint alleges the jurisdictional amount of $3,000, the parties

are Pennsylvania citizens, and no attempt to show diversity has been made.

Since we do not derive jurisdiction directly from the Constitution, it is clear that our authority must be found in Congressional enactments. Since diversity is not claimed, warrant would have to be found in Section 1331 of the Judiciary Act:

"The district courts shall have original jurisdiction of all civil actions wherein the matter in controversy exceeds the sum or value of $3,000, exclusive of interest and costs, and arises under the *Constitution, laws or treaties of the United States.* June 25, 1948, c. 646, 62 Stat. 930." Tit. 28 U.S.C.A. § 1331. (Emphasis supplied.)

■ Allegations of the complaints as to denials of due process and equal protection of the laws under the Fifth Amendment have apparently been abandoned. It is therefore taken as conceded that no unconstitutional act of Congress or other purely federal action is involved, which alone—of course—would raise Fifth Amendment questions. Palko v. State of Connecticut, 1937, 302 U.S. 319, 322, 58 S.Ct. 149, 82 L.Ed. 288.

Plaintiffs presently complain that they are being denied equal protection of the law, and being deprived of property without due process, in violation of the guarantees of the Fourteenth Amendment. Then in the next breath they assert that the Addendum was promulgated without lawful authority, and that arbitration under color of the contract procedure has been administered arbitrarily and without authorization. As to these alternate grounds of complaint, it seems that the plaintiffs are on the horns of a dilemma either of which is fatal to the jurisdiction of the Court.

■ The difficulty, of course, is that the Fourteenth Amendment, by its very terms as well as unbroken interpretation, is directed solely against state action. Virginia v. Rives, 1879, 100 U.S. 313, 25 L.Ed. 667; Ex parte Virginia, 1879, 100 U.S. 339, 346, 25 L.Ed. 676.

■■ Next, this is a Court of purely original jurisdiction. State action cannot be reviewed here; that power is reserved to the Supreme Court of the United States. E. g. Heller v. Kreider, 3 Cir., 1938, 98 F.2d 106, 107. The question of state deprivation of due process cannot be determined until the conclusion of the course of justice in its courts. Frank v. Mangum, 1914, 237 U.S. 309, 328, 35 S.Ct. 582, 59 L.Ed. 969; Ex parte Meeks, D.C.W.D.Ky.1927, 20 F.2d 543. Yet the unsuccessful local court attack on the Addendum (very similar in terms to the action before this Court), was dismissed in the Court of Common Pleas, and not even appealed. Glassman v. Philadelphia, 1956, 9 Pa. Dist. & Co. R. 2d 495. Although this controversy has been called a "cornucopia of litigation" by virtue of the many pending proceedings in the local stages of arbitration or litigation, it is clear that the Commonwealth of Pennsylvania, through its Supreme Court, has not been asked or permitted to act.

Until the remedial procedures of the state have been exhausted, however, there can be no federal question on Fourteenth Amendment grounds. And, as stated, if and when that time comes, the final action of the Commonwealth will not be reviewable in this Court of original jurisdiction.

■ The seeming exceptions to the foregoing rule which were argued by plaintiffs are not applicable. One such type of case involves segregation and civil rights which involve federal rights which federal courts may protect even though state remedies have not been exhausted. E. g. Westminster School Dist. of Orange County v. Mendez, 9 Cir., 1947, 161 F.2d 774, 781. The other type of case in which exceptional intervention by federal courts has been permitted are the rare and isolated instances in the past where relief against confiscatory rates has been permitted on behalf of public utilities, such as Home Tel. & Tel. Co. v. City of Los Angeles, 1912, 227 U. S. 278, 33 S.Ct. 312, 57 L.Ed. 510 and Railroad and Warehouse Commission of

Minnesota v. Duluth St. Ry. Co., 1926, 273 U.S. 625, 47 S.Ct. 489, 71 L.Ed. 807. They cannot be deemed applicable here, in view of their remoteness to the factual situations at hand, and the more recent decisions in directly comparable cases, e. g. Heller v. Kreider, 3 Cir., 1938, 98 F.2d 106.

■ The alternate contention is that the Addendum and the proceedings conducted under it are without color of legislative or executive authority. If that allegation be taken as literally true, all the more is there no Fourteenth Amendment question. That guarantee is directed solely against action by a state, to the exclusion of action by private individuals. Green v. Elbert, 8 Cir., 1894, 63 F. 308, 309; Mason v. Hitchcock, 1 Cir., 1939, 108 F.2d 134, 135 and cases cited.

Parenthetically, however, it may be observed that it is rare for action by public officials, clothed with apparent authority, to be held to be purely personal and private acts. For constitutional purposes:

"  *  *  *  the subject must be tested by assuming that the officer possessed power if the act be one which there would not be opportunity to perform but for the possession of some state authority." Home Tel. & Tel. Co. v. Los Angeles, 1912, 227 U.S. 278, 288–289, 33 S.Ct. 312, 315.

■ Another asserted jurisdictional ground of these suits, their posture or aspect as class or taxpayers' suits, is insufficient as a matter of settled law. Plaintiffs allege that various federal funds are allocated to municipalities, including the City of Philadelphia, and that these funds are used to pay for public works let out under contracts containing the Addendum. Cataloguing the numerous statutes under which it is possible for municipalities to receive federal aid, they assert that the manner in which the City regulates the bidding on projects, financed in some part by these federal funds, presents a question cognizable here.

The precise point was presented in this District and Circuit twenty years ago. That a federal question is presented when federal funds are contributed to local public works was argued by the plaintiff taxpayer in Heller v. Kreider, 3 Cir., 1938, 98 F.2d 106. Plaintiff sought to enjoin his township from constructing a school building and brought his action in this District, contending that the use of federal funds invested the case with a basis for federal jurisdiction. It was shown that over forty thousand dollars had been contributed by the federal government toward the construction of the Lancaster County consolidated school in question. The court of appeals held that the district court had no power to intervene in the purely local matter, not only as a matter of comity (since the matter was already in local litigation) but also because no federal question was involved.

■ Furthermore, ever since the decision in Massachusetts v. Mellon, 1923, 262 U.S. 447, 487, 43 S.Ct. 597, 67 L. Ed. 1078, it has been the law that a taxpayer does not have standing to raise the question of the manner in which federal funds are expended. The taxpayers' interests have been held to be too remote and to lack the essential elements of a justiciable controversy. Alabama Power Co. v. Ickes, 1938, 302 U.S. 464, 478, 58 S.Ct. 300, 82 L.Ed. 374.

■ More general is the principle repeatedly stated by the United States courts that there must be real substance to the federal question; it must appear clearly and specifically rather than by inference or suggestion. McCartney v. State of West Virginia, 4 Cir., 1946, 156 F.2d 739, 741. If the concept of "federal question" is to have any meaning, the court must look beyond the verbiage of a complaint to the substance of the plaintiff's grievance, and dismiss the action where no real basis for federal jurisdiction exists. Polhemus v. American Medical Ass'n, 10 Cir., 1944, 145 F.2d 357, 359.

With those principles in mind, other grounds asserted in the pleadings and

arguments may be dismissed with one illustration of the general type of argument made to invoke our jurisdiction. Virtually conceding that there is no direct authority for intervention by a District Court of the United States in a case like the present, Lincoln Mills was cited as an example of the ways in which federal law is adapting to novel situations. Textile Workers Union of America v. Lincoln Mills of Alabama, 1957, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972. That case, it is conceded, interprets an act of Congress in a broader light than it had been theretofore viewed. Counsel, however, recognized that it was clearly a case within the provisions of the Judiciary Act, since it arose under the laws of the United States. Specifically, it concerned § 301 of the Labor Management Relations Act of 1947, 61 Stat. 156, 29 U.S.C.A. § 185. It presented the question of enforcement, in a federal district court, of a collective bargaining agreement's provisions for handling grievances, the ultimate step of which was arbitration. Grievances were processed under the specified procedure until the union's demands were finally denied by the employer. The Supreme Court of the United States held that a federal district court had jurisdiction, *under the statute,* to compel arbitration. It also held that another Act of Congress, the Norris-La Guardia Act, 29 U.S.C.A. § 101 et seq., had not withdrawn jurisdiction to compel arbitration of labor disputes in an industry affecting commerce as defined in the Act.

The plaintiffs' cases are the very reverse of the illustration they cited. Obviously, the contracts in question are not claimed to be subject to the provisions of the Labor Management Relations Act. Again, of course, the plaintiffs are not seeking to compel arbitration under their contract. To the contrary, they are trying to avoid, by a form of collateral attack, the very arbitration method for which they contracted.

It would be profitless to pursue the contentions further, in the face of settled law on the jurisdictional matter. Since the question of jurisdiction is decisive, there is no necessity to consider any other aspect of the case. Mason v. Hitchcock, 1 Cir., 1939, 108 F.2d 134, 136.

For the foregoing reasons, it is ordered that the defendants' motions to dismiss be and the same are hereby granted, and it is ordered that the several complaints of the plaintiffs herein be and the same are hereby dismissed.