**Larry HENRY, Plaintiff-Appellant,**

v.

**Burton CAGLE et al., Defendants-Appellees.**

**No. 72-2207.**

United States Court of Appeals, Sixth Circuit.

Argued April 16, 1973.

Decided July 13, 1973.

Kelly & Leiderman, Jasper, Tenn., James D. Robinson, Chattanooga, Tenn., for Burton Cagle, Danny Cagle, & Western Surety Co.; Goins, Gammon, Baker & Robinson, Chattanooga, Tenn., on briefs; Jerome C. Ables, South Pittsburg, Tenn., of counsel.

H. H. Gearinger, Chattanooga, Tenn., for plaintiff-appellant.

Before WEICK, EDWARDS and McCREE, Circuit Judges.

EDWARDS, Circuit Judge.

Appellant Henry appeals from a judgment *non obstante veredicto* entered by a District Judge in the United States District Court for the Eastern District of Tennessee, Southern Division. Appellant had secured jury verdicts totaling $5,500 against defendants-appellees but the District Judge set the verdicts aside, holding that in this civil rights damage action under 42 U.S.C. § 1983 (1970) there were no facts proven from which the jury could appropriately have held that the injuries plaintiff received occurred under color of state law.

The principal defendant was a constable, Burton Cagle, and the other defendant against whom judgment was entered was his son, Danny. At the time two other defendants (Deputy Sheriffs Condra and Sons) [1] had plaintiff in custody, following an election night argument in a cafe, and were questioning him.

---

1. The jury found no cause for action as to these two defendants.

Constable Cagle, having learned that plaintiff's father had fired a shot at his son, Danny, came to the scene, approached the three men outside of the jail, and proceeded to attack plaintiff, who received a nearly fatal knife wound. Plaintiff testified that Constable Cagle struck him while Danny Cagle knifed him and the two deputies stood by.

The case was decided principally on the question of whether or not the constable at the time was investigating a crime within his official orbit. There appears to be no doubt that his constitutional duties did empower him to do this. But it is appellees' contention that the argument was wholly personal with Cagle and not a matter of any official duties. As to this issue Cagle's cross-examination supplied some evidence from which the jury might have found that Cagle was on official business in approaching plaintiff on the night in question.

We believe, however, that the record will also support a finding of state action in that Cagle's chance of access to the plaintiff was enhanced by the fact that he was a law enforcement officer.

The jury apparently accepted appellant's version of what happened, as set forth below:

"Q Now, how long was it from the time he had left until he came back?

A It was only a few minutes, I couldn't estimate, a short time, a very short time.

Q Who was with him this time?

A A whole car load of boys. I know Danny Cagle was with him and I believe his brother, Darrell, was with him.

Q Did he come back in the same car that he was in the first time?

A I believe he did, yes, sir.

Q Was he dressed the same?

A Yes, sir.

Q Did he have a pistol still on?

A Still in his back pocket.

Q Okay. All right. Now, you say Burton Cagle got out of his car and came over to where you and the two deputies were?

A Yes, sir, and started cussing me and hit me, hit me in the side of the jaw here (indicating) and knocked me up against the county car and me and him was trying to—I was trying to protect myself, me and him got in a scuffle, while we was scuffling his son, Danny Cagle, jumped out of the car and come around behind the county patrol car and started cutting me with a knife.

Q What was Joseph Sons and Rex Condra doing during this time?

A They were standing on each side of me.

Q Not doing anything?

A Not doing anything.

Q Are you saying that Burton Cagle made threatening remarks to you first and then struck the first blow?

A Right.

Q Both of those?

A Yes, sir.

Q You didn't say anything back to him before the first blow was struck?

A No, sir.

Q You are standing between the two deputies and he comes over and strikes you where?

A In the side of the jaw."

The law under which plaintiff-appellant filed his complaint 42 U.S.C. § 1983 (1970), states:

§ 1983. Civil action for deprivation of rights

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizens of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

As the District Judge clearly recognized, the critical question in this case is whether or not there was evidence from which the jury could have found that appellants Cagle were acting "under color of" state law within the meaning of § 1983. The definition of this phrase is set forth in United States v. Classic as follows:

Misuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law, is action taken "under color of" state law. Ex parte Virginia, 100 U.S. 339, 346 [, 25 L.Ed. 676]; Home Telephone & Telegraph Co. v. Los Angeles, 227 U.S. 278, 287 et seq. [, 33 S.Ct. 312, 314, 57 L.Ed. 1423]; Hague v. C. I. O., 307 U.S. 496, 507, 519 [, 59 S.Ct. 954, 960, 965, 83 L.Ed. 1423]; cf. [3 Cir.], 101 F.2d 774, 790. United States v. Classic, 313 U.S. 299, 326, 61 S.Ct. 1031, 1043, 85 L.Ed. 1368 (1941).

This definition was adopted in the context of interpretation of statutes providing criminal sanctions against violations of civil rights. 18 U.S.C. §§ 241, 242 (1970). It has also been squarely applied to civil actions for damages authorized by 42 U.S.C. § 1983 (1970). Monroe v. Pape, 365 U.S. 167, 184, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961). *See also* United States v. Price, 383 U.S. 787, 794, n.7, 86 S.Ct. 1152, 16 L.Ed.2d 267 (1966).

We believe that the Cagles' approach to appellant when he was a prisoner under guard of Sheriff's deputies could have been viewed by the jury as having "been made possible only because the wrongdoer [was] clothed with the authority of state law." United States v. Classic, *supra*, 313 U.S. at 326, 61 S.Ct. at 1043. It seems clear to us that there was evidence that Constable Cagle consciously or unconsciously used his official position so as to be able to commit a wholly unofficial assault, and that Danny Cagle acted in concert with him. This is exactly parallel to the color of law ruling which the Supreme Court made in United States v. Price, *supra*,

383 U.S. at 795, 86 S.Ct. 1152, albeit in Price under far more aggravated circumstances.

The judgment of the District Court is reversed and vacated and the case is remanded for entry of judgment on the verdicts of the jury.