# AUGUST, 1932

THE COUNTY DEMOCRATIC EXECUTIVE COMMITTEE IN AND FOR BEXAR COUNTY, TEXAS, ET AL. V. C. A. BOOKER.

No. 6319.   Decided August 15, 1932.
(52 S. W., 2d Series, 908.)

90

*Templeton, Brooks, Napier & Brown* and *W. L. Matthews,* all of San Antonio, for appellants.

The Democratic Committee in passing the resolution acted

merely as a voluntary political assembly and not as a legislative body. Robinson v. Holman, 181 Ark., 428, 26 S. W. (2d) 66, (certiorari denied by Supreme Court of U. S.), 282 U. S., 804, 51 S. Ct., 88; Nixon v. Condon, 286 U. S., 73, 52 S. Ct., 484; R. S., 1925, Arts. 3100 to 3118; Walker v. Hopping, 226 S. W., 146.

*Cunningham, Moursund, Johnson, Rogers & Slatton,* all of San Antonio, for appellee.

The resolution and actions of the State Convention and State Executive Committee deprives plaintiff of his right to vote in violation of the Fourteenth Amendment. Western Ind. Co. v. Leonard, 248 S. W., 655; Nixon v. Condon, 286 U. S., 73, 76 L. Ed., 984; Raymond v. Chicago U. T. Co., 207 U. S., 20, 52 L. Ed., 78; Love v. Wilcox, 119 Texas, 256, 28 S. W. (2d) 515.

MR. JUSTICE GREENWOOD delivered the opinion of the court.

On May 24, 1932, the State Convention of the Democratic Party in Texas regularly adopted the following resolution for the purpose of prescribing the qualifications of members of said party entitling them to participate in the primaries and conventions of the party in Texas:

"BE IT RESOLVED, that all white citizens of the State of Texas, who are qualified to vote under the constitution and laws of the State shall be eligible to membership in the Democratic Party and as such entitled to participate in its deliberations."

This resolution was thereafter certified by its Chairman on direction of the State Democratic Executive Committee to the chairmen of the county executive committees of the several counties for their guidance and for the guidance of the officers appointed to hold the Democratic primaries in the several election precincts in such counties on July 23, 1932, and on August 27, 1932, for the nomination of candidates of the Democratic Party for State, District, County and Precinct offices.

This action was brought by C. A. Booker, a negro, for himself and all other negroes in Bexar county, Texas, similarly qualified as electors, against J. K. Weber and C. O. Wolfe, Chairman and Secretary, respectively, of the Bexar County Democratic Executive Committee, and Adolph Lassner, presiding judge of election precinct No. 73, in Bexar County, and their successors in office, to restrain them from enforcing said resolution against Booker and the other negroes of Bexar County for whom he sued, and to require them to permit him

and them to vote in the Democratic primaries of Bexar County. He alleged that he was a Democrat, a resident and citizen of San Antonio, that he had been a resident and citizen of Bexar County for thirty-two years, that he was over twenty-one years of age and was a duly qualified elector and voter in election precinct No. 73 of Bexar County, under the laws of the United States and the Constitution and laws of Texas. Booker also alleged that there were 2,000 other negroes in Bexar County with the same rights as himself to participate in the Democratic primaries.

Upon a trial the court below found the facts in accordance with the averments of the appellee's petition and rendered a decree restraining J. K. Weber and C. O. Wolfe, Chairman and Secretary, respectively, of the Bexar County Democratic Executive Committee, from in any manner complying with the resolution of the State Democratic Convention and the directions of the State Democratic Executive Committee and from directing the precinct officers of Bexar County to comply therewith. The trial court also enjoined Adolph Lassner, presiding judge of election precinct No. 73 in Bexar County, from complying with the resolution and from preventing Booker or other negroes from participating in the Democratic primaries to be held on July 23, 1932, and on August 27, 1932. The San Antonio Court of Civil Appeals reversed the judgment of the trial court and dismissed the cause. Associate Justice Cobbs dissenting. 53 S. W. (2d) 123. Pending rehearing, the Court of Civil Appeals certified to the Supreme Court the following question, as arising for determination under the facts above set forth:

"Did said Democratic State Convention have the right, power and authority to adopt, and have the officials of said party the lawful power to enforce, said resolution, and thereby prevent negroes from voting in the primaries held by said party for the purpose of selecting its nominees for public offices?"

■■ Our civil statutes provide that "when the Supreme Court decides a question certified to it by a Court of Civil Appeals, such decision shall be binding upon the Court of Civil Appeals," and further that the Court of Civil Appeals after certifying an issue of law to the Supreme Court shall retain the cause "for judgment in harmony with the decision of the Supreme Court upon the issue submitted." Articles 1854, 1851, Revised Statutes. These statutes forbid the Supreme Court from answering purely abstract questions of law. A certified question is purely abstract where the Court of Civil Appeals in dismissing the cause has manifestly entered a correct judgment, no matter what

answer might be given to such question. Especially is this true where parties who would be necessarily affected by a determination of the question propounded are not even before the court.

The rule above stated is firmly established by the uniform decisions of the Supreme Court. An accurate recent statement of the rule was made in deciding the case of Owens v. Thedford, 114 Texas, 393, 269 S. W., 418, where it is said:

"No answer is made to any question which is not to become a final and conclusive determination of some question of law. No matter what answer we gave to question No. 2, it could furnish no basis for any adjudication whatever. * * * It necessarily follows that question No. 2 is entirely abstract. So frequently have abstract questions been dismissed that it must be regarded as settled that the Court has no power to answer same. Berlin Iron Bridge Co. v. San Antonio, 92 Texas, 388, 49 S. W., 211; G., H. & S. A. Ry. Co. v. V. F. Zantzinger, 92 Texas, 369, 44 L. R. A., 553, 71 Am. St. Rep., 859, 48 S. W., 563; Western Union Telegraph Co. v. Burgess, 92 Texas, 125, 54 S. W., 1022."

The facts certified by the Honorable Court of Civil Appeals show that regardless of any possible answer to the question certified, the law required a decree dismissing appellee's suit for want of indispensable, necessary parties as defendants.

■ Appellee has sued no one save the chairman and secretary of the Democratic Executive Committee of Bexar County and the presiding judge of election precinct No. 73 in Bexar County, and their successors in office. The primary election statutes provide that "there shall be for each political party required by this law to hold primary elections for nomination of its candidates a county executive committee, to be composed of a county chairman and one member from each election precinct in such county," and that "the executive committee shall have general supervision of the primary in such county." Articles 3118 and 3119, R. S. Obviously a county executive committee can be sued only by bringing suit against the county chairman and the committeemen from each election precinct. There is no warrant in law for the substitution of a secretary for all the committeemen save the chairman. Under no view of their powers, whether derived from party usage or statutes, could the chairman and secretary of the county executive committee of any party or their successors in office exercise any effective control or authority over the right to vote in the primaries of appellee or those similarly situated. No decree of the court directed against such chairman and secretary could accomplish anything.

No cause of action is stated by appellee against the county chairman and secretary or their successors in office and therefore as to them no other judgment could be rightly entered than one dismissing appellee's suit.

There remains for our consideration only the legal effect of appellee's action against the primary presiding judge of election precinct No. 73 of Bexar County and his successors in office. It is to be noted that besides the Chairman and Secretary of the County Democratic Executive Committee, appellee has sued and seeks to control by the court's judgment the action of the presiding judge and his successors alone.

■ Article 3104 of the Revised Civil Statutes provides for the conduct of precinct primary elections by a presiding judge assisted by an associate judge and two clerks, or under certain circumstances, by the above mentioned judges and clerks and two supervisors and two additional clerks. This article also provides that the oath required of judges, clerks and supervisors in general elections shall be taken by the primary judges, clerks and supervisors. So far as the primary statutes relate to the acceptance or rejection of any tendered ballot, no power is conferred on a presiding primary judge other than is conferred on the associate primary judge. Turning to the statutes governing general elections we find it expressly provided that the presiding judge and the associate judge must concur in a decision sustaining the right of one offering to vote as against objection. The plain language of Article 3006 is: "When a person offering to vote shall be objected to by an election judge or a supervisor or challenger, the presiding judge shall examine him upon an oath touching the points of such objection, and, if such person fails to establish his right to vote to the satisfaction of the majority of the judges, he shall not vote."

■ Bearing in mind these provisions of the primary and general election statutes, the conclusion is inescapable that the presiding judge alone is utterly denied the power to determine any privilege or right asserted by appellee and that a decree against the presiding judge alone would be utterly futile.

The result is precisely the same whether the authority of the presiding judge be treated as derived wholly from primary statutes or from both the primary and general election statutes, or from party usage unaffected by statute.

Under primary statutes or under party usage, where provision is made for two primary election judges and nothing is prescribed as to how the two judges shall exercise the chief

function for which they'are plainly named, towit: to determine whether to accept or reject tendered ballots, the only way in which such function could be validly exercised is through concurrence of the two judges. If the Legislature, by giving the officers of primaries and general elections the same designations and requiring of them the same oaths, meant them to possess and exercise like powers, as seems probable, the result is the same in denying to either a single presiding or associate judge the authority to accept or reject any tendered ballot.

██ Should appellee succeed in obtaining a decree binding the presiding judge of his primary election precinct, the associate judge would remain as free as before the institution of the suit to exercise his untrammelled discretion in deciding the challenge disclosed by appellee's petition of his right to vote.

It follows that appellee's suit as against the presiding primary judge and his successors in office is as fatally defective as his suit against the Chairman and Secretary of the County Executive Committee and their successors in office, for want of parties who would have to be sued and bound before the court could enforce any relief sought by appellee.

As observed by the United States Supreme Court, if appellee's suit had not been dismissed, but instead a judgment had been entered for appellee, "the court would find itself in the position of having made a decree it could not enforce, of atempting to give a relief which was beyond its power, because the party whose action was necessary to that relief was not a party to the suit." Kendig v. Dean, 97 U. S., 423, 426, 24 L. Ed., 1062.

Courts should carefully abstain from expressing opinions determinative of controversies in the absence of parties necessarily vitally interested and affected. Any answer to the question certified being precluded by the fact that such question is wholly abstract as above shown, it is ordered that the certificate of the Court of Civil Appeals presenting such question be and the same is hereby dismissed.