**KAUFFMAN et al. v. PARKER et al.**

No. 13580.

Court of Civil Appeals of Texas.
Fort Worth.

Nov. 20, 1936.

Rehearing Denied Dec. 21, 1936.

S. C. Rowe, Edgar L. Bradford, Jr., and Everett B. Comer, all of Fort Worth, for appellant B. F. Kauffman.

Rogers & Spurlock, of Fort Worth, for appellant Hugh L. Small.

Cantey, Hanger & McMahon and J. A. Gooch, all of Fort Worth, for appellees W. R. Parker et al.

PRESTON MARTIN, Special Associate Justice.

This suit had its origin in the filing of a suit for mandamus and injunction by W. R. Parker and seventeen others, in their behalf, and for all others similarly situated. The plaintiffs being candidates for office before the Democratic primary elections held in Tarrant county during the summer of year 1936. Hugh L. Small and B. Frank Kauffman being named party defendants. Appellants were, at different times during the summer campaign, county chairman, and, as such, chairman of the Tarrant county executive committee. Appellees Parker and many others were candidates running for various offices before, said primaries as held in Tarrant county. It is claimed by appellees that appellant Hugh L. Small was first county chairman of the Democratic Committee of Tarrant county, and resigned as such on or about June 23, 1936, at which time appellant B. Frank Kauffman was elected as his successor and took the position of county chairman of the Democratic Committee of Tarrant county, Tex.

Pursuant to and by authority of article 3108, Revised Civil Statutes of 1925, as amended Acts 1931, 42nd Legislature, c. 105, § 2 (Vernon's Ann.Civ.St. art. 3108), appellees as candidates for office and offering to run before said primaries, were assessed certain sums of money in proportion to the emoluments of office, such assessments ranging from district attorney $650, down to and including constable and public weigher at $5; in all it is claimed that some $23,000 (or to be exact, $22,905) assessed and collected and in possession of the appellants for the purpose of defraying the expenses of the first and second primaries.

It is shown by the record that the total expenses of the first, or July primary is $8,798.02, and the total expense second primary, or August primary, is $4,352.35, and the 20 per cent. remitted to candidates is $4,483.

Total expenses and remittances..$17,633.37
Leaving a balance on hand un-
disposed of                            5,271.63

In connection with the above and foregoing figures, we desire to set out the following itemized statement as taken from the statement of facts at page 28 of this record:

"Fort Worth, Texas.
"June 23, 1936.
"Mr. B. F. Kauffman, Chairman, County Executive Committee

"Law Offices
"Hugh L. Small
· "1002 Burkburnett building

| | |
|---|---:|
| "To services as county chairman 1934–5–6 | $2,500.00 |
| "Office rent 24 months | 600.00 |
| "Stenographer, office help, 24 months | 480.00 |
| "Office phone, long distance, wires | 83.00 |
| "Stamps, office supplies, typewriter equipment | 17.00 |
| "Total, | $3,680.00 |

"(In pen and ink the following notation appears:)
"Approved by Auditing
"Committee 8/29/36."

On page 32 of the statement of facts, we quote as follows:

"We, the above mentioned committee hereby approve the above statement in its entirety and hereby approve the sum of $400.-00 to be paid to B. Frank Kauffman, Chairman of the Tarrant County Democratic Executive Committee as a remuneration for his services in conducting said primaries.

"We also approve the sum of $316.63 to be paid to Jewel E. Dycus, secretary to the Tarrant County Democratic Executive Committee for his services in conducting said primaries.

"We also approve that the balance of $1000.00 remaining after the above mentioned remunerations have been paid to the above mentioned parties, be so used in conducting the affairs of the Tarrant County Democratic Executive Committee until the primaries of July and August 1938."
"[Signed] A. H. Sanders, Chairman
"Dr. C. E. Walker
"O. E. Tunstill."

On page 33 of the statement of facts, we quote from same:

"To the Auditing Committee of the Tarrant County Democratic Executive Committee:

"Please approve the sum of $400.00 to me as Chairman of the Tarrant County Democratic Executive Committee from June 23, 1936, to the present.
"[Signed] B. Frank Kauffman."

On same page of the statement of facts a similar statement and request is made by Jewel E. Dycus, secretary of the Tarrant County Democratic Executive Committee for the sum of $316.63 as services from June 23, 1936, to present.

On pages 34, 35, and 36 of the statement of facts, we find that the auditing committee approved each and all of the foregoing reports, and application for money allowed appellants and the secretary Jewel E. Dycus, leaving the sum of $1,000 set aside by the chairman to be used in conducting the affairs of the said committee until the primaries of July and August, 1938.

Article 3117 of the Revised Civil Statutes provides the time of meeting of the various county committees of any political party, and the order in which the names of the candidates are printed on the official ballot.

Article 3108 of the Revised Civil Statutes, as amended (Vernon's Ann.Civ.St. art. 3108), provides for the expenses of the primary. As both attorneys for appellants and appellees cite this article on expenses, we here quote same as follows:

"At the meeting of the county executive committee provided in Article 3117, the county committee shall also carefully estimate the cost of printing the official ballots, renting polling places where same may be found necessary, providing and distributing all necessary poll books, blank stationery and voting booths required, compensation of election officers and clerks and messengers, to report the result in each precinct to the county chairman, as provided for herein, and all other necessary expenses of holding such primaries in such counties and shall apportion such cost among the various candidates for nomination for county and precinct offices only as herein defined, and offices to be filled by the voters of such county or precinct only (candidates for State offices excepted), in such manner as in their judgment is just and equitable, giving due consideration to the importance and emoluments of each such office for which a nomination is to be made and shall, by resolution, direct the chairman to immediately mail to each person whose name has been requested to be placed on the official ballot a statement of the amount of such expenses so apportioned to him, with the request that he pay the same to the county chairman on or before the Saturday before the fourth Monday in June thereafter."

The money when collected and placed in the hands of the appellants became a trust fund, and could only be disbursed and paid out as provided by statute; certainly it could not be spent by the chairman of the executive committee, these appellants, for salaries and services performed by the chairman, nor could it be spent for unnecessary expenses, but must be spent for the purposes intended by the statute and under the provisions of the statutes authorizing such expenditures.

If there is a surplus of money on hand and with the chairman after all the expenses of the campaign, the first and second primaries, are paid in August, it rightfully belongs to the donors, those who intrusted it to the chairman, and it should be returned to those who put it up in proportion to what they each contributed. This was recognized by the appellants when they refunded or paid back 20 per cent. of the funds they had on hand after the second primary. It is without authority of law to spend it for back rents for former years time, and for salary to the chairman and/or for any purpose not provided for in the statutes. The period of the two primaries does not last but about three months, and the chairman first having collected the assessments from the candidates—has the money in his possession—can easily pay all necessary expenses for the full period of the time it requires to hold both primaries, and there is very little expense until another two years comes around, and then a different set of candidates may be in the various races, and they will be assessed under the statute for such race. The statute does not contemplate holding over funds from one administration of two years to another two years hence. Nor does the statute provide for the payment of rents for twenty-four months time, nor for a stenographer, office help, for a period of twenty-four months time—only a portion of same can be designated as actual, necessary, and chargeable to those who gave it under the primary laws.

In our opinion, the judgment of the trial court should be affirmed, and it is so ordered.

Affirmed.

DUNKLIN, Chief Justice, and B. W. KING, Special Associate Justice, concurring.

On Motions for Rehearing.

PER CURIAM.

Defendants filed no pleadings of any character in answer to plaintiffs' petition

and the writs of mandamus and injunction were granted after introduction of the evidence upon application for those writs. Counsel for defendants appeared and participated in that hearing, and the statement of facts, showing the evidence introduced, was agreed to by all parties, and is a part of the record before us. By written arguments filed here as briefs, different assignments of error are presented which are, in substance, assignments of fundamental error, all on the ground that the petition, on its face, is insufficient to show the right to the issuance of those two interlocutory orders; and that the same is likewise true of the evidence introduced on the hearing by the court before the issuance of those writs.

■■ By one of the assignments it is insisted that the allegations in plaintiffs' petition consist, in the main, of mere conclusions of the pleader and not a sufficient specification of facts to comply with the general rule in equity governing such procedure. It is apparent from the petition that plaintiffs did not know the items of expenses of the primaries that had been paid and for which defendants claimed credit, and, manifestly, defendants had peculiar knowledge of the disbursements made and for what purpose; and the appointment of an auditor was sought for the purpose of ascertaining those facts before the trial of the case on the merits. Under such circumstances, general allegations, to the effect that defendants had funds in their hands remaining after disbursements made for all purposes permitted by articles 3108 and 3022a of the statutes (Vernon's Ann.Civ.St.), were sufficient as against a general demurrer. And even though a special exception had been urged on the ground noted and had been erroneously overruled, the right of appellants to complain was waived by reason of proof of the facts establishing the right to the relief, with no objection thereto by appellants, for lack of proper pleadings or on any other ground. 3 Tex. Jur. § 878, p. 1254.

■ The appointment of the auditor and the writ of mandamus requiring defendants to submit to him the documentary evidence therein mentioned for use in further proceedings was clearly within the jurisdiction of the court, since the auditor was an arm of the court, and the writ of mandamus served the same function as a subpœna duces tecum, to which plaintiffs had a statutory right. Furthermore, the mandamus

was in the nature of a bill of discovery and maintainable under provisions of article 2002, Rev.Civ.Statutes, and decisions cited in 15 Tex.Jur. § 4, p. 221, and for an accounting sustainable under decisions cited in 1 Tex.Jur. § 102, p. 396.

■ The opinion of Chief Justice Cureton in Bell v. Hill, 123 Tex. 531, 74 S.W. (2d) 113, is cited in support of the proposition advanced that when the funds were paid into the County Democratic Executive Committee title thereto was vested in the Democratic Party, and therefore plaintiffs and other candidates who contributed those funds were without title in their separate and individual capacities. That decision has no proper application here, since it involved only the question whether or not the complainants, who were negroes, could be deprived of the right to participate as voters in a primary election, by virtue of a resolution adopted at the State Democratic Convention, upon complaint of relators that the resolution so adopted was a denial of constitutional rights of the relators. Articles 3108 and 3022a, Vernon's Ann.Civ.St., are applicable here, and there is nothing to show that they do not express the public policy of the state, or even of the Democratic Party. Furthermore, we know of no rule of law which would make the political association known as the Democratic Party of Tarrant county or the County Democratic Executive Committee a legal entity capable of taking title to the funds in controversy. 8 R.C.L. pp. 941–952; 18 C.J. 158; Daniel v. State (Tex.Cr.App.) 83 S.W.(2d) 335.

■ Moreover, the provisions of those statutes specifying the purposes for which the funds could be used clearly implies that the committee was without authority to use the same for any other purpose, thus evidencing an intention to treat the funds as trust funds, and negativing any possible inference that title to the excess funds remaining after payment of the expenses of holding the elections should vest either in the executive committee or the county chairman, or in the Democratic Party of Tarrant county, or elsewhere than in the contributors of those funds.

■ By another assignment, appellants insist that all the 106 members of the county executive committee were necessary parties defendants, since authority to conduct the primary elections is vested by statutes in the committee as a whole, and therefore it could not be bound by the judgment prayed for against the two county chairmen, the

sole defendants in the suit. The decision of our Supreme Court in County Democratic Executive Committee of Bexar County v. Booker, 122 Tex. 89, 52 S.W.(2d) 908, is cited in support of that contention. That likewise was an application for a writ of mandamus to compel the County Democratic Executive Committee to allow relator to vote in a county Democratic primary election, and the county chairman and other officers of the executive committee were the sole defendants in the suit. One of the holdings of the Supreme Court in that case was that the other members of the committee were necessary parties, since the committee as a whole was authorized to conduct the election, and therefore it could not be legally bound by a mandamus against the defendants only. But that case is distinguishable from the present proceeding in that in this case the primary elections have been held already, leaving nothing further to be done by the county executive committee relative thereto; and since the evidence introduced shows conclusively that through its subcommittee it has delegated to the defendants, as chairmen, the possession and authority to dispose of the unexpended funds contributed by the candidates, and with specific authority to apply a considerable portion thereof for purposes not warranted by articles 3108 and 3022a, Vernon's Ann.Civ.St.

We overrule the further contention that jurisdiction to determine the disposition of the excess funds in controversy is vested exclusively in the county executive committee, free of interference by courts, since it is well settled that a court of equity has jurisdiction to accord relief to the beneficiary of a trust for misuse of trust funds and for betrayal of the trust in any other manner. And the denial by defendants of the right of the candidates contributing to that trust fund to participate therein, with the intention of defendants to appropriate a considerable portion of the same to their own use, was a sufficient showing of right of plaintiffs to the temporary writ of injunction, restraining further use or disposition of such excess pending the trial of the suit on the merits. Article 4642, Rev.Civ.Statutes; 24 Tex.Jur. § 176, p. 232, and decisions there cited; 32 C.J. pp. 42, 43; 14 R.C.L. p. 312 et seq.

We conclude further that article 3022a, Vernon's Ann.Civ.St., limits the expenses and services for which the county executive committee may be compensated out of the funds deposited by candidates, which limitation must be read into the provisions of article 3108, and that at least some of the items which the defendants are holding, with express consent of the executive committee as a whole, are held without lawful authority therefor.

For the reasons noted, the assignments of error of both appellants were overruled on original hearing without a specific discussion of them but after due consideration of their merits, and we adhere to the disposition so made and overrule both motions for rehearing.