**POUNDS et al. v. JENKINS et al.**

No. 5819.

Court of Civil Appeals of Texas. Texarkana.

Oct. 21, 1941.

Rehearing Denied Nov. 6, 1941.

Pollard, Lawrence & Reeves and W. Dewey Lawrence, all of Tyler, for appellants.

Troy Smith, of Tyler, for appellees.

HALL, Justice.

Charles A. Jenkins, executor of the estate of J. E. Lydick, deceased, and Laura Lydick, a feme sole, appellees, instituted this suit against W. A. Pounds, Jr., Tyler State Bank & Trust Company, and C. A. Prater, appellants, for an accounting for money alleged to be due appellees by appellants from sale of certain oil payments. Appellees alleged that theretofore, on December 23, 1936, in the court below in cause No. 6042–A, J. E. Lydick recovered judgment against one Jule Alford in the sum of $4,000 and had been adjudged the beneficial owner of three oil payments against oil properties in the East Texas field, subject to a prior claim thereto held by W. A. Pounds, Jr., as trustee, to secure Alford's indebtedness to the Tyler State Bank & Trust Company. It was alleged that judgment in cause No. 6042–A provided for the sale of the three oil payments to satisfy the Lydick judgment after the payment of Alford's indebtedness to the bank and that by virtue of said judgment in favor of Lydick and against Alford, Pounds became "liable and bound to hold said oil payment obligations for the use and benefit of Charles A. Jenkins, Executor, and Laura Lydick after the Tyler State Bank & Trust Company had been paid. * * *" Appellees alleged, further, that the bank had been paid in full from the sale of said oil payments by Pounds, trustee, and that there was a balance in his hands, the amount of which was unknown to appellees, which belonged to them and for which Pounds had failed to account. It was alleged, further, that by virtue of the judgment in cause No. 6042–A Pounds became a trustee "for the purpose of collecting the proceeds thereof after the payment to the Tyler State Bank & Trust Company as aforesaid and paying the same to Charles A. Jenkins, Executor. * * *" Pounds,

trustee, was a party-defendant to cause No. 6042–A.

Appellants answered with general and special exceptions, general and special denials, and alleged that appellees had elected the remedy of securing judgment against Alford for their debt, with sale of said oil payments to satisfy said judgment, and were, therefore, bound by said election; that their failure to collect the money owing them was due to a failure on their part to pursue the remedy they had elected. Appellants alleged further that "several times immediately following the rendition of the judgment in cause No. 6042–A" Pounds and the bank offered to transfer to the Lydicks the bank's rights in and to the oil payments upon payment by them of the claim of said bank, which offer was refused by the Lydicks; that the Lydicks waived any rights they had to the said oil payments in their statement to appellants "that said properties were not of sufficient value for them to have any equity therein," and that Stringer, president of the bank, and appellant Pounds, who is vice-president of said bank, relying on said waiver, purchased certain outstanding interests in the Gladewater lease, against which was one of the oil payments in question, and gave their personal guarantee to one Prater, to whom they conveyed said interest and oil payment, against any loss in reconditioning the oil well located upon that lease; that Prater reconditioned the Gladewater oil well and made it produce oil. Appellants alleged further that from this deal with Prater respecting the Gladewater lease the bank liquidated the Alford indebtedness for which the oil payments were given as collateral; "that if the plaintiffs (appellees) are now permitted to claim an equity at this late date, which said equity exists only by virtue of the things done by said defendants (appellants) as hereinbefore recited, and but for which such equity would not have existed, the said defendants will be caused to suffer an inequitable loss and damage which the plaintiffs, by reason of their actions and of the facts herein alleged, are now estopped to assert."

J. E. Lydick, the original plaintiff in cause No. 6042–A, died August 31, 1936, several months before judgment was entered in this cause, and Charles A. Jenkins, executor of his estate, was permitted to intervene in said suit. Mrs. Laura Lydick, widow of J. E. Lydick, deceased, assigned

her interest in the judgment in cause No. 6042–A to Charles A. Jenkins, executor, and in the discussion that follows, whenever possible, Jenkins, executor, will be substituted for the Lydicks.

Trial was to the court without a jury and resulted in judgment for appellee Jenkins, executor, and against appellant, W. A. Pounds, Jr., in the sum of $3,600. No judgment was entered against either C. A. Prater or the Tyler State Bank & Trust Company.

Appellant's propositions 1, 2, 3 and 4 are directed to the action of the trial court in overruling certain special exceptions and the general demurrer leveled at appellees' petition. It is asserted that the allegations to which these exceptions are directed were mere conclusions of the pleader. In so far as the special exceptions are concerned, we are inclined to agree with appellant's contention. Appellant's right to complain of this action of the trial court, however, was waived for the reason that the proof offered to establish such facts was admitted without objection by appellant that there were no proper pleadings to support it. Kauffman v. Parker, Tex.Civ.App., 99 S.W.2d 1074; 3 Tex.Jur. p. 1254, Sec. 878, and authorities cited in support of the text. No complaint of surprise is made respecting the evidence offered by appellee, nor is there any injury shown by its admission. Southwestern Tel. & Tel. Co. v. Andrews, Tex.Civ.App., 178 S.W. 574, writ refused. In our opinion, the trial court committed no error in overruling the general demurrer. This case was fully developed by both parties in a trial before the court, and "we can perceive no good reason why the erroneous ruling, upon the sufficiency of the plea, should not be treated as a mere irregularity in practice, not affecting the real merits of the controversy, and not affording a ground for reversing the judgment." McClenny v. Floyd's Adm'r, 10 Tex. 159, 164. These propositions are overruled.

Appellant's 5th proposition is: "The plaintiffs in this cause having two inconsistent remedies at law, one to establish an ownership of certain property as against all adverse claimants, and the other to establish a money debt with lien and foreclosure therefor against such claimed property, when they sued for and obtained relief by way of the latter remedy in cause No. 6042–A, elected their remedy and could not, having failed to pursue the remedy thus obtained, subsequently pursue the right and claim of ownership of the claimed property in this cause."

The following finding of fact by the trial court is explanatory of the judgment in cause No. 6042–A;

"On July 11th, 1935, J. E. Lydick and wife, Laura Lydick filed a suit (6042–A) in this court against Jule Alford and wife Amie Alford and W. A. Pounds, Jr. Trustee, seeking to establish an interest in all of said oil payment obligations, claiming in substance, that they had advanced certain money to Jule Alford for him to invest for them which he had done in his own name and had failed to account to them, and that these oil payment obligations which he (Alford) has assigned to Pounds, Trustee, were acquired, in part, with their money. Pounds was made a party to that suit, and he entered his appearance therein as a party defendant, in June, 1936, and on June 22d, 1936, this court heard the testimony in that case. Before Judgment was entered in that case, J. E. Lydick died and Chas A. Jenkins qualified as executor of the estate of J. E. Lydick, deceased, and was substituted as a party plaintiff in that case. On December 23d, 1936 (the term of court having been extended) judgment was rendered in that case decreeing that the Lydicks were the beneficial owners of the three oil payment obligations to the amount and extent of $4000.00 subject to the prior right of Pounds, Trustee for Tyler State Bank & Trust Co. therein until the bank should be paid the balance of its debt against Jule Alford, which, in June, 1936, at the time the testimony was heard in that case, was a balance of $4200.56. The judgment in that case authorized a sale of the oil payment obligations as under execution, subject to the right and interest of Pounds as Trustee therein until his bank was paid; and provided that if they did not sell for enough to pay the $4000 adjudged to the Lydicks (and Jenkins, executor), the balance should be made out of any property of Jule Alford, etc. No pleadings were filed by Pounds in that case setting up any claim of any waiver, disclaimer or estoppel of the Lydicks as to any interest claimed by them in the oil payment obligations.

"The judgment in that case was not appealed from by any party, and it became final."

From the above finding and the judgment itself in cause No. 6042-A, it clearly appears that the trial court in that case decreed: (1) That Charles A. Jenkins, executor of the J. E. Lydick estate, was entitled to recover from Jule Alford the sum of $4,000; (2) that he was the beneficial owner of the three oil payments here in controversy, subject to the lien of the Tyler State Bank & Trust Company; (3) judgment against Alford for the sum $4,000; and (4) order of sale of the three oil payments to satisfy same. That decree declared appelleee Jenkins, executor, to be the beneficial owner of the oil payments. He had a right to and did stand upon its solemn pronouncement of ownership. He was not compelled to exercise his right under the judgment of having the oil payments sold subject to the lien of the bank, but he could refrain from selling and ride them out, taking the chance of ultimately getting his money out of them. Moreover, the two actions are different and distinct. This action is against Pounds, trustee, and seeks to force him to account for money coming into his hands perforce of such trusteeship from the sale of these oil payments decreed in cause No. 6042-A to belong to appellee. In such circumstances there is no election of remedies. There is nothing inconsistent in this action by Jenkins, executor, seeking to recover the balance remaining of the sale price of the oil payments decreed to him with his action in cause No. 6042-A. Alexander v. Harris, Tex.Civ.App., 254 S.W. 146, writ refused. "To make them inconsistent one action must allege what the other denies, or the allegation in one must necessarily repudiate or be repugnant to the other. It is the inconsistency of the demands which makes the election of one remedial right an estoppel against the assertion of the other, and not the fact that the forms of action are different." 28 C.J.S., Election of Remedies, § 4. This proposition is overruled.

 Appellant's 6th proposition is: "The court should not have entered judgment against Pounds, because the uncontroverted evidence shows that Pounds was under no duty as a trustee for the plaintiffs." As shown by the finding of fact heretofore set out, cause No. 6042-A was instituted by the Lydicks to establish an interest to the extent of $4,000 in the oil payments in controversy which they claimed Alford has purchased in part with their funds, taking title thereto in his name and which he had conveyed to appellant Pounds as trustee to secure his, Alford's, indebtedness to the Tyler State Bank & Trust Company. It is undisputed that Pounds was a trustee of both the bank and Alford, acting as such under the terms of an express trust. He was a trustee under a deed of trust executed by Alford to secure his indebtedness to the bank. Pounds held no other title or interest in the property. His duty under said trust deed simply was to hold this property until Alford's indebtedness to the bank was paid; and if not paid, to sell the oil payments, applying the proceeds, first, to the expenses of the sale, and the payment of the debt due the bank, the balance, if any, remaining in his hands to be paid to the *beneficial owner of said oil payments*. This record reveals that from collections of revenues from, and sales of, these oil payments, Pounds, as trustee, after liquidating Alford's debt to the bank and all other expenses incident thereto, had remaining in his hands the sum of $3,600 which he asserts he divided with Stringer, president of the bank. Pounds contends that by the expenditure of funds by him and Stringer and the oral guarantee by them to Prater against loss in rehabilitating the Gladewater oil well, he and Stringer became entitled to the remaining $3,600 left in his hands after the debt to the bank was paid; that it was their money and credit that brought about the reclamation of the Gladewater well and made it again produce oil. With respect to this contention the trial court found as a fact that "in all the transactions up to the sale of the property to Prater, Stringer and Pounds were both acting as officers and trustee for the bank to collect its debt against Alford. Whatever obligations and expenses that had been incurred in reference to this well up to the closing of the deal with Prater (except the amount that was assumed by Prater), was paid off and discharged out of the $2500 cash paid by Prater, and neither Stringer nor Pounds paid out any of their personal funds which were not so reimbursed out of this $2500." From this finding and undisputed evidence in this record supporting it, the fact is established that Alford's debt to the bank and the outlay of its officers in collecting same had been fully paid. Therefore it seems clear to us that all moneys in excess of the amount of the Alford debt to the bank derived from the sale of these oil payments

would be due and payable to the beneficial owner of same, in this instance Jenkins, executor, not to exceed Alford's indebtedness to him. In the circumstances here, had Jenkins, executor, as beneficial owner not replaced Alford, certainly Pounds would have been, under the very terms of an express trust, bound to return to Alford his property, or the amount of the sale price remaining after his debt to the bank was satisfied. Can it be said, then, that Pounds was not under the same duty to pay this money to Jenkins, executor, who by the very terms of the judgment in cause No. 6042–A, of which Pounds was fully cognizant, had replaced Alford to the extent of his claim of $4,000? We think not. By the judgment in cause No. 6042–A Jenkins had succeeded, to the extent of his debt against Alford, to all the rights and privileges theretofore held and owned by Alford under the deed of trust. He stood in Alford's shoes, and, by virtue of this fact, Pounds became a trustee for him under the terms of an express trust.

But should we be mistaken, in this holding, certainly equity would construct a trust in favor of Jenkins, executor, against Pounds and would force Pounds to account to Jenkins, executor, for the sum of money coming into his hands by virtue of his position. The only authority by which Pounds collected $3,600 here in controversy was that of his trusteeship. He had no other right then and he has no other right now to this money. As said in Dibert v. D'Arcy, 248 Mo. 617, 154 S.W. 1116, 1125: "Whenever a person comes into the possession and control of the property of another, or in which another has an interest, he becomes, with reference to that interest, a trustee, and is charged by law as well as by good morals to exercise such control with due regard to the interests of the beneficiary. Sometimes the trust is implied by law, but oftener the relation arises out of contract between the parties themselves The possession and control is thought to give the trustee such opportunities for oppression and wrong in the management of the property as calls for the closest scrutiny of his acts, and out of this arises one of the most important branches of equity jurisdiction." In Hand v. Errington, Tex.Com.App., 242 S.W. 722, 724, the following from Pomeroy's Equity Jurisprudence, Vol. 3, p. 2397, Sec. 1051, dealing with constructive trusts, is cited with emphasis: "It is not essential for the application of this doctrine that an actual trust or fiduciary relation should exist between the original wrongdoer and the beneficial owner. Whenever one person has wrongfully taken the property of another, and converted it into a new form, or transferred it, the trust arises and follows the property or its proceeds." In 1 Bogert on Trusts and Trustees, p. 155, § 30, it is said: "If, for example, the pledgee realizes on the sale of the pledged goods more than enough to meet the debt and expenses, and refuses to deliver the surplus to the pledgor, it is believed that the pledgor may sue in equity to fasten a constructive trust on the proceeds, the legal title to which undoubtedly rests in the pledgee." And the same text, § 42, at page 187: "Naturally, if the settlor has an interest in reversion following the trust, he can, after the expiration of the trust, compel a reconveyance, or the delivery of possession, by the trustee." This proposition is overruled.

All other propositions brought forward have been carefully examined and, in our opinion, they are without merit and are overruled.

The judgment of the trial court is in all things affirmed.